# Charleston.

## JOHN McSMITHEE'S ADM'R *vs.* THOMAS L. FEAMSTER.

### January Term, 1871.

1. The appellate court will not reverse a judgment for want of joinder to a plea of non-assumpsit. Code of W. Va., chap. 134, sec. 3.

2. Assumpsit is brought against McS. to collect amount of a note assigned to F. by McS. on the ground that the obligor was insolvent when the note fell due. McS. alleges that the assignment was without recourse, and proved on the trial that there was a written contract, which was lost; that F. was to attend a certain sale of real estate belonging to the obligor, which sale was to take place under a decree of the circuit court, and make his money, but the witness could not remember the exact terms of the contract. McS. then offered to prove the value of the land, and that F. did not attend the sale. HELD:

> That if the contract had showed that the assignment was without recourse, then the contents thereof, it being lost, would have been admissible under the general issue. But the right of action on the contract could only be for unliquidated damages which could not be set off against the demand of the plaintiff in this action.

Action of assumpsit, brought to March rules, 1866, in the circuit court of Greenbrier county. Judgment for plaintiff in October, 1869.

The opinion of Judge Maxwell states the grounds of controversy.

The administrator of McSmithee brought the case here for review, he having died pending the suit.

Hon. N. Harrison, Judge of the circuit court of Greenbrier, presided on the trial of the case.

*Price* for the plaintiff in error.

*Snyder* for the defendant in error.

The plaintiff in error has assigned three grounds of error for the reversal of the judgment of the circuit court, as follows:

*First.* "In refusing to hear the evidence offered by the defendant."

*Second.* "In giving judgment for the plaintiff;" and

*Third.* Because, "There was no issue on the plea of *non-assumpsit.*"

There is no foundation, in fact, for the third assignment; because there was an issue formally made on the plea of *non-assumpsit.*

We think the case will fully justify us in assuming that if there is no error in the first ground assigned, then there can be none in the second; for if the court properly excluded the evidence offered by the defendant, the plaintiff was certainly entitled to judgment for his debt.

Under the first assignment of error, upon which it is conceived the whole case depends, we shall consider, *first,* the sufficiency of the defendant's special plea; *second,* the evidence offered to sustain said plea; and *third,* the proofs in reference to the general issue.

We take it to be a well settled rule of law, that an appellate court will not reverse a judgment for the plaintiff, when the plea of the defendant is so defective that a judgment could not be entered for the defendant on a verdict in his favor; nor would it reverse such judgment where the issue made by such plea was immaterial, and would entitle the plaintiff to judgment *non obstante veredicto;* for to do so, in either case, would be vain and futile. But by our statute, "A party may avail himself of any error, appearing on the record, by which he is prejudiced, without excepting thereto." Code, chapt. 131, § 9, p. 627.

This plea alleges that the bond was assigned to the plaintiff by McSmithee, in consideration of 500 dollars, and the further consideration and agreement, in writing, between the parties, that the defendant should attend to a certain

sale of property, which Latrobe had advertised and requested his creditors to attend and make their money; that the plaintiff did not attend said sale, but had he done so he could have made his money, and by his negligence he lost his debt. This is the substance of the plea, and it is surely *sui generis.*

If this plea is true, it is no answer to the action of the plaintiff. It presents an immaterial issue. It contains no averment that in the event the plaintiff should neglect to attend said sale, McSmithee would be released as assignor of the bond; and if such was not the agreement, then, it was immaterial to the defendant whether the plaintiff attended the sale or not, for in either event, his liability as assignor would be the same; nor does it aver that McSmithee, the assignor, sustained any damage by the plaintiff's failure to attend the sale, nor that any sale ever took place. Will the court supply all these averments by mere implication? We think not.

But, again, if this plea shows anything, which we claim it does not, it tends to set up an agreement entirely independent of the written assignment endorsed on the bond, for the breach of which the defendant might have brought separate action against the plaintiff. The assignment is unqualified, and makes no reference to the written agreement here set up. The conditions of the two agreements are in no way dependent on each other, they are distinct and independent, and each imposes a separate obligation, one upon the plaintiff, and the other upon the defendant. It is, however, conceded that by proper averments separate obligations growing out of the same contract or obligation, may be set off against each other under our statute of set-off; but this plea has none of the elements of such a defence. It does not aver damages, failure of consideration, or other ground of set-off; nor is it sworn to as the statute requires. It cannot, therefore, be sustained as a common law, nor as a statutory plea. Moreover, it sets up an agreement without any consideration, and cannot, on that account, be sustained.

*Second.* Does the evidence offered by the defendant sustain

the plea? The only testimony offered, is the recollections of a single witness, who stated that at the time of the assignment of the bond by McSmithee to the plaintiff, there was a written contract, drawn by the witness and signed by the plaintiff, (which had been lost or mislaid,) that the plaintiff was to attend a certain sale of *real estate*, belonging to Latrobe, which was to take place under a decree of the court, to satisfy a balance of the purchase money due thereon, and make his money.

This is the testimony by which the defendant attempts to set up a written agreement to exempt his intestate from all liability as assignor. Would any rational man enter into such agreement? for by its terms the plaintiff was to make his money at all hazards. It was, in effect, taking the bond without recourse on the assignor; and if such was the intention, what was the necessity of such a contract; why not the bond assigned without recourse? If there was a contract, this is surely not all of it; it surely contained other stipulations which the witness must have forgotton. And it is no reflection on the witness to say that, fourteen years after the transaction, it would be almost impossible for him to give a correct and full statement of the terms and conditions of such a contract, and he does not profess to give anything more than its general import; he said he did not recollect its exact terms, "but that his recollection was only as to its general import; that he did not recollect what kind of a sale it was to be until after examining a decree in the clerk's office, then he became satisfied it was a sale of real estate under the decree;" nor could he recollect the circumstances which transpired at the time the contract was written.

Will the court set up this remarkable *written* contract by parol testimony, based upon the vague and unsatisfactory evidence of a single witness, who testifies as to his recollections of the general import of a contract which he wrote fourteen years ago? Courts are always reluctant to admit parol evidence of the contents of written contracts, and the

reason is obvious. Contracts are written in order to preserve the memorial of what the contracting parties have prescribed for each other to do, and to make for themselves a fixed and immutable law, as to what has been agreed on. The writing preserves, unchanged, the matters entrusted to it, and expresses the intention of the parties by their own testimony, and the writing itself, is the only reliable evidence of the contract. In discussing the rule laid down in 1 Gr. on Ev., § 88, that "oral evidence cannot be substituted for any writing the existence of which is disputed and *which is material to the issue between the parties*," Lord Tenterden said: "I have always acted most strictly on the rule, that what is in writing should only be proved by the writing itself. - My experience has taught me the extreme danger of relying on the recollection of witnesses, however honest, as to contents of written instruments; they may be so easily mistaken, that I think the purposes of justice require the strict enforcement of the rule." *Vincent* v. *Cole*, 1 M. & M., 258.

Chief Justice Marshall, in reviewing a question almost identical with that presented in the case at bar, said: "When a written contract is to be proved, not by itself, but by parol testimony, no vague uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. *The substance of the agreement ought to be proven satisfactorily;* and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contracts to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired, if they could be established upon uncertain and vague impressions." *Tayloe* v. *Riggs*, 1 Peters, 591–600.

But, the proof is not only vague and unsatisfactory, it does not sustain the averments of the plea pleaded. The averment is that it was a "sale of *property, which Latrobe had advertised and requested his creditors to attend;*" and the

proof is, that the plaintiff was to attend a certain "sale of *real estate,* belonging to said Latrobe, which *sale was to take place under a decree of the circuit court, to satisfy a balance of the purchase money due thereon.*" Can the court, by any implication which contradicts the facts, hold that the sale referred to in the plea was the same sale that is referred to in the proof. The only similarity between the plea and the proof is, that neither allege any consideration for the agreement set up by the defendant. *Patrick* v. *Horton,* 3 West Virginia R. 23.

If, then, there was not sufficient evidence to identify and set up the agreement alleged in the plea, it would certainly have been useless and nugatory to have admitted evidence to show the breach of said agreement; and the only evidence offered by the defendant, and excluded by the court, was of this character. So we submit that there was no error in the first ground assigned by the plaintiff in error, that the court erred "in refusing to hear the evidence offered by the defendant."

*Third.* We claim it unnecessary to argue, whether or not, the evidence in this case could have been admitted under the general issue. Because, if the proof did not establish the agreement set up by the defendant, nor if its establishment were conceded, was the agreement of such a character as to exonerate the defendant's intestate, in any event, from his liability as assignor; both of which propositions, we think, we have clearly demonstrated, then the same evidence could not avail the defendant under the general issue. The proof is too meagre, vague and uncertain to sustain the defense under any view of the pleadings. The defendant must fail in every aspect of the case.

MAXWELL, J. The third ground assigned as cause of error is, that there was no issue upon the plea of non-assumpsit, and the court had no right to hear the cause until the issues had been made up.

The record shows that the plea of non-assumpsit was

twice entered, once at the May term, 1860, and again at the September term, 1868, and that issue was made upon the plea entered first, which must have been overlooked by the plaintiff in error, when he prepared his assignment of errors.

But if the assignment of error were true in point of fact, it would not be error for which the judgment could be reversed. Code, p. 637, chapt. 134, § 3; *Balt. & O. R. R Co.* v. *Faulkner, infra.*

The first and second assignments of error relate to the refusal of the court to allow the defendant to prove the value of a certain tract of land, and that the plaintiff failed to attend the sale thereof.

The suit was an action of assumpsit to recover the amount paid for a single bill, assigned by McSmithee to the plaintiff, on the ground that the obligor was insolvent at the time the said single bill became due and payable. The defendant insists that the assignment was without recourse, and to support his pretension proved on the trial, that at the time of the assignment of the said single bill, by the said McSmithee to the plaintiff, there was a written contract, (which the witness drew, signed by the plaintiff, which contract was lost and could not be produced at the trial;) that the plaintiff was to attend a certain sale of real estate belonging to the obligor, which sale was to take place under a decree of the circut court, to satisfy a balance of the purchase money due thereon, and make his money; but the witness could not recollect the exact terms of the contract, but stated that he knew there was a contract to the effect set out above; that his recollection was only as to the general import of the contract.

The defendant then offered to prove further the value of the land, and that the plaintiff did not attend the sale, but the court refused to hear the proof.

If the proof had showed that the contract referred to was a contract, that the assignment was without recourse, then the contract, or as it was lost, evidence of its contents would have been admissible in evidence under the general issue.

The right of action on the contract could only be for unliquidated damages, which could not be set off against the demand of the plaintiff in the action. *Webster* v. *Couch*, 6 Rand. 519.

The judgment complained of will have to be affirmed, with damages and costs to the defendant error.

The other judges concurred.

JUDGMENT AFFIRMED.